**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No.  18-22063-GLT |
| | : | |
| DONALD J. ROMERO | : | Chapter 7 |
| | : | |
| *Debtor* | : | |
| | : | |
| Natalie Lutz Cardiello, Trustee | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| United States of America, Internal | : | |
| Revenue Service; Commonwealth of | : | |
| Pennsylvania, Department of Revenue; | : | |
| County of Allegheny; City of Pittsburgh; | : | |
| City of Pittsburgh School District; | : | |
| Pittsburgh Water and Sewer Authority; | : | |
| Jordan Tax Service and Citibank, N.A. | : | |
| | : | |
| Respondents | : | |

**MOTION TO SELL REAL ESTATE FREE AND CLEAR**
**OF THIRD PARTY INTERESTS, LIENS, CLAIMS, CHARGES AND/OR ENCUMBRANCES**

AND NOW COMES Natalie Lutz Cardiello, Trustee, by and through her attorney, Natalie Lutz Cardiello, Esquire, and files this Motion to Sell Real Estate Free and Clear of Third Party Interests, Liens, Claims, Charges and/or Encumbrances, and respectfully represents as follows:

1.  Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 22, 2018.

2.  Natalie Lutz Cardiello was duly appointed and qualified as Trustee and has been so serving.

3.  Debtor is the owner of real property located at 7301 Butler Street, Pittsburgh, PA (Deed Book Volume 11833, Page 256; Tax ID No: 0121-G-00052-0000-00) ("Real Property").  No person other than the Debtor has an ownership interest in the Real Property, and no exemption in the property has been claimed by the Debtor.

4.  This Court has jurisdiction pursuant to 28 U.S.C. §1334, and this is a core proceeding within the meaning of 28 U.S.C. §157.

5.  Respondent, United States of America, Internal Revenue Service ("Internal Revenue Service"), is a governmental entity.  The Internal Revenue Service holds no known liens against the Real Property.

6.  Respondent, Commonwealth of Pennsylvania, Department of Revenue ("Department of Revenue"), is a governmental entity.  The Department of Revenue holds no known liens against the Real Property.

7.   Respondent, County of Allegheny ("Allegheny County"), is a governmental entity.   The County of Allegheny holds no known liens against the Real Property other than current and/or past due real estate taxes due with respect to the Real Property.

8.   Respondent, City of Pittsburgh, is a governmental entity. The City of Pittsburgh holds no known liens against the Real Property other than current and/or past due real estate taxes due with respect to the Real Property.

9.   Respondent, Jordan Tax Service, is a tax collection agency.   Jordan Tax Service holds no known liens against the Real Property other than as agent for the collection of current and/or past due real estate taxes due with respect to the Real Property.

10. Respondent, City of Pittsburgh School District, is a governmental entity. The City of Pittsburgh School District holds no known liens against the Real Property other than current and/or past due real estate taxes due with respect to the Real Property.

11. Respondent, Pittsburgh Water and Sewage Authority ("PWSA"), is a governmental authority. The PWSA holds a statutory lien against the Real Property for unpaid water and sewage fees.

12. Respondent, Citibank, NA ("Citibank"), is a national banking association with a judgment lien against the Real Property.

13. Based on a lien search performed by the Trustee, the liens and encumbrances against the Estate's interest in and to the said Real Property in the order of their priorities are as follows, to wit:

   (a)   Current and past due taxes due to Allegheny County, the City of Pittsburgh, the City of Pittsburgh School District, and Jordan Tax Service (as agent).

   (b)   A statutory lien for unpaid water and sewage fees in favor of PWSA.

   (c)   A judgment in favor of Citibank, NA in the amount of $5,404.45 (plus costs) recorded in the Court of Common Pleas of Allegheny County, Pennsylvania, at No. AR-15-249.

14. The scheduling of a party herein as a lien holder and/or interest holder, including but not limited to being scheduled as the holder of a lien, statutory, judicial or consensual, is without prejudice to the rights of the Trustee/Estate, and/or any party in interest to challenge the validity, extent, and/or priority thereof, and/or to challenge the claim as to the debt, and/or the amount alleged due and owing thereon.

15. The Trustee has received an offer to purchase the Real Property from 401 Center, LLC for a sale price of $44,900.  A copy of the Agreement of Sale is attached hereto as Exhibit "A".

16. To the best of the Trustee's knowledge, information and belief, and based on the certification contained in the "AS IS, WHERE IS" Addendum to Agreement of Sale signed by the proposed purchaser, the proposed purchaser has no relationship with the Debtor.

17. The Trustee believes that the value of the Real Property is approximately $44,900, based on a market analysis prepared by her realtor.

18. The Trustee believes and therefore avers that the best interests of this Estate and its creditors will be served by this Court, pursuant to 11 U.S.C. §363(b), authorizing the sale of said Real Property, free and clear of all third party interests, liens, claims, charges and/or encumbrances against the same, specifically including but not limited to all liens and/or encumbrances, including but not limited to those

of all parties named as Respondents hereto, including but not limited to the statutory, mortgage, and/or judicial liens of the Respondents hereto as set forth above, excepting only those rights of way, easements and restrictions of record or as are apparent from an inspection of the Real Property.

19. The Real Property will be sold free and clear of all liens and/or encumbrances (judicial, statutory and consensual), security interests, claims, charges and interests, including ownership interests, all of which shall be divested from the Real Property, excepting only easements and rights of way, as well as restrictions, exceptions, reservations, and covenants of record and/or as an inspection of the Real Property would disclose.

20. The sale of the Real Property shall be a sale of the Real Property in "AS IS", "WHERE IS" condition, without representations or warranties of any kind whatsoever, and the participation of the purchaser in the sale process shall constitute an agreement and representation that the purchaser has inspected the Real Property, and is purchasing the same solely on the basis of such inspections, and not as the result of any representation of any kind whatsoever by the Estate/debtor, or its/his/her agents, except as otherwise set forth herein.

21. To assure that the sale is a sale for the market value of the Real Property, higher and/or better offers for said realty will be accepted at the time of hearing on the sale of said realty (said higher offers being made in increments of $500.00), pursuant to §363(b), and the sale to the maker of the highest and best offer should be approved, authorized and confirmed.

22. The Trustee believes and therefore avers that the aforesaid method of sale is fair and reasonable, and in the best interest of this Estate, and that a higher and better price would not be obtained through continued marketing of the Real Property.

23. In order to bid at the sale hearing, a prospective bidder must place a deposit of $5,000 in escrow with the Trustee and provide evidence of his or her ability to pay the balance of the purchase price at the time of closing, either in the form of a letter from a bank indicating that the proposed purchaser has the required funds on hand, a mortgage commitment letter, or similar documentation acceptable to the Trustee.  Such deposit and documentation are due no later than (3) business days prior to the day of the sale hearing.  Closing shall occur on or before ten days from the date the Order of Sale becomes final, TIME BEING OF THE ESSENCE, with all such payments to be via certified check, cashier's check, or such other forms of assured and guaranteed payment as may be acceptable to the Trustee's counsel. Possession shall be delivered at closing.

24. In the event of the failure of the purchaser to remit payment in full within the required time frame, (or such extensions, not to exceed 30 days as the Trustee, in her sole and exclusive discretion, may accord to the purchaser) the Trustee may, at her option, declare a default, retain the deposit for the benefit of the Estate, and resell the Real Property, in which case the purchaser shall be liable for any deficiency, unless such inability to close is the result of the inability of the Trustee/Estate to have complied with the terms of the sale confirmation Order.  The Trustee is hereby authorized (but not required) to sell the Real Property to the next highest bidder, and so on, in order to liquidate the Real Property for the benefit of the Estate.

25. Title shall be conveyed by Trustee's Special Warranty Deed, and the Trustee is, pursuant to §363(b), specifically accorded the authority to convey the Real Property described above, together with related rights of way and easements, under and subject to the existing rights of way, restrictions and easements, if any, as appear of record or as may be apparent from an inspection of the Real Property.

26. The purchaser shall be deemed to have released any and all claims he/she/they may have against the Trustee/Estate, or any of them, or that he/she/they may hereafter acquire against them, or either of them, known and/or unknown, under federal and/or state law, for any environmental liability or claim, including but not limited to "CERCLA" or any similar statutes arising out of conditions in, on, or about the Real Property so purchased.

27. The Trustee has not given nor been given any consideration for her agreement hereto except as herein set forth.

28. Real estate taxes shall be pro-rated on a fiscal year basis, between the purchaser and the Estate.

29. Real estate transfer taxes, if any, shall be pro-rated between the parties equally.

30. The proceeds of sale of the Real Property shall be used as follows, to wit:

(a)  to pay the costs of sale, specifically including but not limited to advertising, printing, mailing and notice fees;

(b)  to pay any other such costs as may be properly incurred, if any, customary closing expenses, including sales commissions, and other such items as provided for in the motion or to effect said sale, and any real estate taxes, penalties, interest and costs for prior years as remain unpaid, as well as such amounts (if any) as may be due and owing upon statutory liens for water and/or sewage charges assessed by municipal authorities providing such services to said Real Property;

(c)  to pay the Trustee's fees and Trustee's counsel fees (which fees shall be reserved for but not paid out until such fees are approved by the Court for payment after motion duly filed seeking such approval and authorization for payment);

(d)  to pay lien holders, if any, in the order of their priority, to the extent that the claim(s) are not disputed, and to the extent, if any, that a claim is disputed, the funds shall be retained pending further Order of Court; and

(e)  to pay the Debtor the amount of the claimed exemption in the amount of $24,322.

All remaining funds shall be held by the Trustee pending further Order of this Court.

WHEREFORE, the Trustee prays this Honorable Court enter an Order authorizing this sale on the terms and conditions stated herein, and grant such other and further relief as it deems just and proper.

Dated:  November 5, 2018                    Respectfully submitted,

*/s/Natalie Lutz Cardiello*
Natalie Lutz Cardiello, Esquire
PA ID# 51296
107 Huron Drive
Carnegie, PA 15106
ncardiello@comcast.net
(412) 276-4043