# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE    ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

| BUYER(S): 401 Center LLC. | SELLER(S): Natalie Cardiello BK Trustee |
|---|---|
| **BUYER'S MAILING ADDRESS:**<br>410 Center St.<br>South Haven, MI 49090 | **SELLER'S MAILING ADDRESS:**<br>107 Huron Dr<br>Carnegie PA 15106 |

## PROPERTY

ADDRESS (including postal city) **7301 Butler Street**

ZIP **15206-1031**,

in the municipality of **Pittsburgh**, County of **Allegheny**,

in the School District of **Pittsburgh**, in the Commonwealth of Pennsylvania.

Tax ID #(s): **0121-G-00052-0000-00** and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Buyer is not represented by a broker)

| Broker (Company) **Berkshire Hathaway Home Services** | Licensee(s) (Name) **Joe Yost** |
|---|---|
| Company License # **RB043060C** | State License # **RS319015** |
| Company Address **5801 Forbes Ave, Pittsburgh, PA 15217-1601** | Direct Phone(s) **(412) 889-5965**<br>Cell Phone(s) **(412) 889-5965** |
| Company Phone **(412) 521-5500** | Email **JoeYost@ThePreferredRealty.com** |
| Company Fax _____ | Licensee(s) is (check only one): |
| Broker is (check only one): | ☒ Buyer Agent (all company licensees represent Buyer) |
| ☒ Buyer Agent (Broker represents Buyer only) | ☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Seller is not represented by a broker)

| Broker (Company) **Remax Select** | Licensee(s) (Name) **Kevin Shaner** |
|---|---|
| Company License # **RB063030C** | State License # **RS228684** |
| Company Address **1761 Golden Mile Hwy, Monroeville, PA 15146-2011** | Direct Phone(s) **(412) 576-5689**<br>Cell Phone(s) **(412) 576-5689** |
| Company Phone **(724) 933-6300** | Email **yourhomesold@kevinshaner.com** |
| Company Fax **(724) 519-2303** | Licensee(s) is (check only one): |
| Broker is (check only one): | ☒ Seller Agent (all company licensees represent Seller) |
| ☒ Seller Agent (Broker represents Seller only) | ☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: __JSS__    ASR Page 1 of 13    Seller Initials: __NC__

Pennsylvania Association of Realtors®    COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS 2018
rev. 1/18; rel. 4/18

1. **By this Agreement**, dated October 17, 2018 ,
2. Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
3. 2. **PURCHASE PRICE AND DEPOSITS (4-14)**
4. (A) Purchase Price $ $44,900.00
5. ( Forty-Four Thousand, Nine Hundred
6. _____ U.S. Dollars), to be paid by Buyer as follows:
7. 1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
8. if not included with this Agreement:    $ 5,000.00
9. 2. Additional Deposit within _____ days of the Execution Date:    $
10. 3.
11. Remaining balance will be paid at settlement.
12. (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
13. within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
14. sonal check.
15. (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: ___
16. To Be Held By Natalie Cardiello BK Trustee ),
17. who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or ter-
18. mination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
19. the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
20. Agreement.
21. 3. **SELLER ASSIST (If Applicable) (1-10)**
22. Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward
23. Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
24. approved by mortgage lender:
25. 4. **SETTLEMENT AND POSSESSION (4-14)**
26. (A) Settlement Date is November 16, 2018 , or before if Buyer and Seller agree.
27. (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
28. Buyer and Seller agree otherwise.
29. (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
30. current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
31. fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay
32. up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
33.
34. (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
35. 1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
36. 2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31.
37. School tax bills for all other school districts are for the period from July 1 to June 30.
38. (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here:
39.
40. (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here:
41.
42. (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
43. broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
44. is subject to a lease.
45. (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
46. assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller
47. will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will
48. acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
49. ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
50. 5. **DATES/TIME IS OF THE ESSENCE (1-10)**
51. (A) Written acceptance of all parties will be on or before: ~~October 24, 2018~~ 11/9/2018
52. (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
53. essence and are binding.
54. (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
55. ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
56. the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
57. tialed and dated.
58. (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
59. ment of the parties.
60. (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
61. and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
62. to all parties, except where restricted by law.

63. Buyer Initials: JSS    ASR Page 2 of 13    Seller Initials: NC

64  **6. ZONING (4-14)**
65  Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdi-
66  vidable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
67  voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
68  Zoning Classification, as set forth in the local zoning ordinance: **Resdential**
69  **7. FIXTURES AND PERSONAL PROPERTY (9-16)**
70  (A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
71  and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceil-
72  ing fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars);
73  garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment;
74  unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences;
75  mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware
76  (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners;
77  built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the
78  Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems.
79  Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____
80  _____
81  _____
82  (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment
83  systems, propane tanks, satellite dishes and security systems): _____
84  (C) EXCLUDED fixtures and items: _____
85  _____
86  **8. MORTGAGE CONTINGENCY (9-16)**
87  ☒ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
88  may include an appraisal contingency.
89  ☐ ELECTED.
90  (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ _____ | Loan Amount $ _____ |
| Minimum Term _____ years | Minimum Term _____ years |
| Type of mortgage _____ | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender **Cash** | Mortgage lender _____ |
| Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. | Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

106  (B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage applica-
107  tion(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case
108  no later than _____.
109  1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mort-
110  gage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right
111  to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's
112  mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to
113  make a good faith effort to obtain mortgage financing.
114  2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demon-
115  strating lender's conditional or outright approval of Buyer's mortgage application(s):
116  a. Does not satisfy the terms of Paragraph 8(A), OR
117  b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
118  received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writ-
119  ing by the mortgage lender(s) within **7** DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other
120  than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employ-
121  ment).
122  3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,
123  all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
124  will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this
125  Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
126  for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
127  (3) Appraisal fees and charges paid in advance to mortgage lender(s).

128  Buyer Initials: JSS                     ASR Page 3 of 13                     Seller Initials: ACP

129 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
130 LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific
131 level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The
132 appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher
133 or lower than the Purchase Price and/or market price of the property.
134 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
135 the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
136 Buyer will do so at least ___15___ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
137 by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
138 lender(s) to make the above mortgage term(s) available to Buyer.
139 (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
140 cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
141 identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
142 otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
143 Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
144 application.
145 (F) **Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or**
146 employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
147 ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
148 reject, or refuse to approve or issue, a mortgage loan commitment.
149 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
150 repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ___5___
151 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
152 expense.
153    1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
154       agrees to the RELEASE in Paragraph 28 of this Agreement.
155    2. **If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within** ___5___
156       **DAYS,** notify Seller of Buyer's choice to:
157       a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will
158          not be unreasonably withheld, OR
159       b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
160          Paragraph 26 of this Agreement.
161    If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to
162    Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree
163    to the RELEASE in Paragraph 28 of this Agreement.

**FHA/VA, IF APPLICABLE**
164
165 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
166 chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
167 has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
168 Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
169 $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
170 proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
171 is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
172 not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
173 Property are acceptable.
174 Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
175 Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department,
176 makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
177 more than two years, or both."
178 (I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's** Acknowledgement
179 ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
180 getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
181 FHA will not perform a home inspection nor guarantee the price or condition of the Property.
182 (J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
183 purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
184 connection with this transaction is attached to this Agreement.

185 **9. CHANGE IN BUYER'S FINANCIAL STATUS (4-14)**
186 In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and
187 lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not lim-
188 ited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation;
189 entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may**
190 **affect Buyer's ability to purchase.**

191 Buyer Initials: JSS                  ASR Page 4 of 13               Seller Initials: _____

10. **SELLER REPRESENTATIONS (4-14)**
    (A) **Status of Water**
        Seller represents that the Property is served by:
        ☒ Public Water   ☐ Community Water   ☐ On-site Water   ☐ None   ☐ _____
    (B) **Status of Sewer**
        1. Seller represents that the Property is served by:
           ☒ Public Sewer           ☐ Community Sewage Disposal System   ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
           ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)      ☐ Holding Tank (see Sewage Notice 3)
           ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
           ☐ None (see Sewage Notice 1)   ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
           ☐ _____
        2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
           Notice 1: There is no currently existing community sewage system available for the subject property. Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.
           Notice 2: **This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
           Notice 3: **This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.
           Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.
           Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.
    (C) **Historic Preservation**
        Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
        _____
    (D) **Land Use Restrictions**
        1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):
           ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
           ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
           ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
           ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
           ☐ Other _____
        2. **Notices Regarding Land Use Restrictions**
           a. **Pennsylvania Right-To-Farm Act:** The property you are buying maybe located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
           b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.
           c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

Case 18-22063-GLT    Doc 34-1    Filed 11/05/18    Entered 11/05/18 17:42:22    Desc
Exhibit A - Agreement of Sale    Page 6 of 15
dotloop signature verification: [illegible]
DocuSign Envelope ID: 34DE54F3-FB8A-4451-BA10-53B3C478104B

257     d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are
258     environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the
259     land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer
260     has been advised of the need to determine the restrictions on development of the Property and the term of any contract now
261     in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.
262 (E) **Real Estate Seller Disclosure Law**
263 Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real
264 estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residen-
265 tial real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer
266 of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING**
267 **UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures
268 regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale
269 of condominium and cooperative interests.
270 (F) **Public and/or Private Assessments**
271 1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner asso-
272 ciation assessments have been made against the Property which remain unpaid, and that no notice by any government or public
273 authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to vio-
274 lations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition
275 that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
276 _____
277 2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
278 _____
279 (G) **Highway Occupancy Permit**
280 Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.
281 **11. WAIVER OF CONTINGENCIES (9-05)**
282 **If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions,**
283 **boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise**
284 **any of Buyer's options within the times set forth in this agreement is a Waiver of that contingency and Buyer accepts the**
285 **Property and agrees to the release in Paragraph 28 of this agreement.**
286 **12. BUYER'S DUE DILIGENCE/INSPECTIONS (9-16)**
287 (A) **Rights and Responsibilities**
288 1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to
289 surveyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections.
290 2. Buyer may make two pre-settlement walk-through inspections of the Property. Buyer's right to these inspections is not waived
291 by any other provision of this Agreement.
292 3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
293 4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
294 5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless
295 otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.
296 (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
297 "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
298 licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
299 inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for
300 Notices Regarding Property and Environmental Inspections)
301 (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
302 Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a
303 written corrective proposal to Seller, according to the terms of Paragraph 13(B).
304     **Home/Property Inspections and Environmental Hazards (mold, etc.)**
305 **Elected**   Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior   JS Waived
306 _____ doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances;
307 electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water
308 penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other
309 environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other
310 items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home
311 Inspection Law, the home inspection must be performed by a full member in good standing of a national home
312 inspection association, or a person supervised by a full member of a national home inspection association, in
313 accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed
314 or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections)
315     **Wood Infestation**
316 **Elected**   Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a   JS Waived
317 _____ wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided
318 by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage
319 lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited
320 to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals

321 Buyer Initials: JSS           ASR Page 6 of 13           Seller Initials: 

| | | |
|---|---|---|
| 322 | | active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide appli- |
| 323 | | cator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain |
| 324 | | a written Report from a professional contractor, home inspector or structural engineer that is limited to structural |
| 325 | | damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property. |

**Deeds, Restrictions and Zoning**
327 Elected  Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-  JSS Waived (DS)
328 _____ nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
329         Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is
330         permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
331

**Water Service**
333 Elected  Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise  JSS Waived (DS)
334 _____ qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
335         locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
336         condition, at Seller's expense, prior to settlement.

**Radon**
338 Elected  Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency  JSS Waived (DS)
339 _____ (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels
340         or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay
341         of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of
342         lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem,
343         it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates
344         or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection.
345         Information about radon and about certified testing or mitigation firms is available through Department of
346         Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O.
347         Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

**On-lot Sewage (If Applicable)**
349 Elected  Buyer may obtain an Inspection of the individual on-lot sewage disposal system from a qualified, professional  JSS Waived (DS)
350 _____ inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, and
351         empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition, at
352         Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot
353         Sewage Inspection Contingency.

**Property and Flood Insurance**
355 Elected  Buyer may determine the insurability of the Property by making application for property and casualty insurance for  JSS Waived (DS)
356 _____ the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the
357         insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may
358         be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to
359         Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance
360         premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insur-
361         ance agents regarding the need for flood insurance and possible premium increases.

**Property Boundaries**
363 Elected  Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal  JSS Waived (DS)
364 _____ description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property sur-
365         veyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or
366         constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations
367         of size of property are approximations only and may be inaccurate.

**Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
369 Elected  Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a  JSS Waived
370 _____ risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz-
371         ards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard**
372         **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved**
373         **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-**
374         **arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any**
375         **lead-based paint records regarding the Property.**

**Other**
377 Elected  _____  Waived
378         _____
379
380         The Inspections elected above do not apply to the following existing conditions and/or items: _____
381         _____
382

(D) **Notices Regarding Property & Environmental Inspections**
    1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
       the surface of a structure where it may cause mold and damage to the building's frame.

Case 18-22063-GLT    Doc 34-1    Filed 11/05/18    Entered 11/05/18 17:42:22    Desc
Exhibit A - Agreement of Sale    Page 8 of 15
dotloop signature verification: dtlp.us/kkpn-zonE-sKry
DocuSign Envelope ID: 34DE54F3-FB8A-4451-BA10-53B3C478104B

387  2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
388  3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
389     of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsi-
390     bility to dispose of them properly.
391  4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to
392     investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the
393     property would be affected or denied because of its location in a wetlands area.
394  5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
395     pollen and viruses) have been associated with allergic responses.
396  6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
397     directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
398     20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
399     Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
400     and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
401     calling 1-877-724-3258.
402 **13. INSPECTION CONTINGENCY (4-14)**
403  (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
404     in Paragraph 12(C).
405  (B) Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer
406     will, within the stated Contingency Period:
407     1. Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR
408     2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
409        Paragraph 26 of this Agreement, OR
410     3. Present the Report(s) to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.
411        The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the cor-
412        rections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections.
413        Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental require-
414        ments if performed in a workmanlike manner according to the terms of Buyer's Proposal.
415        a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
416           Period.
417           (1) During the Negotiation Period, Seller will either agree to satisfy all the terms of Buyer's Proposal or negotiate, by written
418               or verbal communication, another mutually acceptable written agreement, providing for any repairs or improvements to
419               the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
420           (2) If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable
421               written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
422               Negotiation Period ends.
423        b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within
424           _____ days (2 if not specified) **following the end of the Negotiation Period,** Buyer will:
425           (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
426               Agreement, OR
427           (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
428               of Paragraph 26 of this Agreement.
429        **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this**
430        **Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property**
431        **and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the**
432        **Negotiation Period.**
433  (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
434     days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the
435     name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected comple-
436     tion date for corrective measures. Within ___5___ DAYS of receiving Seller's Proposal, or **if no Proposal is provided within the**
437     **stated time,** Buyer will notify Seller in writing of Buyer's choice to:
438     1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
439     2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
440        Paragraph 26 of this Agreement, OR
441     3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mort-
442        gage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the
443        mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller,
444        which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer
445        may, within ___5___ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned
446        to Buyer according to the terms of Paragraph 26 of this Agreement.
447     **If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to**
448     **Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.**
449 **14. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
450     In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-

451 Buyer Initials: _____      ASR Page 8 of 13      Seller Initials: _____

452  erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the
453  property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the
454  property and result in a change in property tax.
455  **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (4-14)**
456  (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
457  received after Seller has signed this Agreement and before settlement, Seller will within ___5___ DAYS of receiving the notices and/or
458  assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
459  1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
460  notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
461  2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
462  within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within ___5___ DAYS
463  that Buyer will:
464  a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
465  Paragraph 28 of this Agreement, OR
466  b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
467  Paragraph 26 of this Agreement.
468  If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to
469  Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
470  (B) If required by law, within ___30___ DAYS from the Execution Date of this Agreement, but in no case later than ___15___ DAYS prior to
471  Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
472  of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the
473  Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.
474  1. Within ___5___ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy
475  of the notice to Buyer and notify Buyer in writing that Seller will:
476  a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improve-
477  ments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
478  b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
479  notify Seller in writing within ___5___ DAYS that Buyer will:
480  (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
481  will not be unreasonably withheld, OR
482  (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
483  of Paragraph 26 of this Agreement.
484  If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written
485  notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this
486  Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the
487  notice provided by the municipality.
488  2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before
489  Settlement Date to make the required repairs/improvements, Buyer may, within ___5___ DAYS, terminate this Agreement by writ-
490  ten notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
491  3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller
492  will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(3) will survive settlement.**
493  **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**
494  (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
495  ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of
496  the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the
497  condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
498  ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
499  the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration
500  (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions
501  set forth in Section 5407(a) of the Act.
502  (B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
503  **PLANNED COMMUNITY:**
504  If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
505  Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
506  this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
507  Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
508  Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
509  (C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED**
510  **COMMUNITY:**
511  1. Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
512  a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
513  that the association is required to provide these documents within 10 days of Seller's request.

514 Buyer Initials: [JSS]   ASR Page 9 of 13   Seller Initials: [NB]

Case 18-22063-GLT   Doc 34-1   Filed 11/05/18   Entered 11/05/18 17:42:22   Desc
Exhibit A - Agreement of Sale   Page 10 of 15
dotloop signature verification: [illegible]
DocuSign Envelope ID: 34DE54F3-FB8A-4451-BA10-53B3C478104B

2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.
3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

## 17. TITLES, SURVEYS AND COSTS (4-14)

(A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.

(C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(D) Seller has the right, upon request, to receive a free copy of any title abstract for the Property from the party for whom it was prepared.

(E) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 17(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 17(C) items (1), (2), (3) and in Paragraph 17(E).

(H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.

(I) COAL NOTICE (Where Applicable)
THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____

(K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.
2. Notices Regarding PrivateTransfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

## 18. MAINTENANCE AND RISK OF LOSS (1-14)

(A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property) specifically listed in this Agreement in its present condition, normal wear and tear excepted.

Buyer Initials: JSS  ASR Page 10 of 13  Seller Initials: 

581   (B) If any part of the Property included in the sale fails before settlement, Seller will:
582       1. Repair or replace that part of the Property before settlement, OR
583       2. Provide prompt written notice to Buyer of Seller's decision to:
584          a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
585             if any, OR
586          b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
587             part of the Property.
588       3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or if Seller
589          fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within _____5_____ DAYS or before Settlement Date,
590          whichever is earlier, that Buyer will:
591          a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
592          b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
593             Paragraph 26 of this Agreement.
594          If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice
595          to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
596   (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
597       replaced prior to settlement, Buyer will:
598       1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
599       2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
600          Paragraph 26 of this Agreement.
601 19. HOME WARRANTIES (1-10)
602   At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller under-
603   stand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-
604   existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifi-
605   cations that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home
606   warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.
607 20. RECORDING (9-05)
608   This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
609   causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
610 21. ASSIGNMENT (1-10)
611   This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable,
612   on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless oth-
613   erwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
614 22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)
615   (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
616       laws of the Commonwealth of Pennsylvania.
617   (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either
618       party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.
619 23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)
620   The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
621   Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
622   real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
623   chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
624   to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. tax-
625   ation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer
626   you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold,
627   you may be held liable for the tax.
628 24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)
629   The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
630   for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal
631   police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
632   erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.**
633 25. REPRESENTATIONS (1-10)
634   (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
635       licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
636       Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
637       covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
638       Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
639   (B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property (including fixtures and any personal property
640       specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property
641       IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
642       Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the struc-
643       tural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of con-
644       ditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems con-
645       tained therein.

646 Buyer Initials: JSS                        ASR Page 11 of 13                        Seller Initials: [initials]

Case 18-22063-GLT   Doc 34-1   Filed 11/05/18   Entered 11/05/18 17:42:22   Desc
Exhibit A - Agreement of Sale   Page 12 of 15
dotloop signature verification: dtlp.us/Mp7-ZWE-sfry
DocuSign Envelope ID: 34DE54F3-FB8A-4451-BA10-53B3C478104B

647     (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
648     (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.
649 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**
650     (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
651         deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
652         Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
653     (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
654         determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
655         1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
656            agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
657         2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
658            Broker how to distribute some or all of the deposit monies.
659         3. According to the terms of a final order of court.
660         4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
661            deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))
662     (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____1_____ days (180 if not
663         specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
664         Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
665         request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the sub-
666         ject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's
667         request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between
668         Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit
669         monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit
670         monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their
671         legal rights to pursue litigation even after a distribution is made.
672     (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
673         law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
674         monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
675     (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
676         1. Fail to make any additional payments as specified in Paragraph 2, OR
677         2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
678            legal or financial status, OR
679         3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
680     (F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
681         1. On account of purchase price, OR
682         2. As monies to be applied to Seller's damages, OR
683         3. As liquidated damages for such default.
684     (G) ☐ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED**
685         **DAMAGES.**
686     (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
687         and Seller are released from further liability or obligation and this Agreement is VOID.
688     (I) Brokers and licensees are not responsible for unpaid deposits.
689 **27. MEDIATION (1-10)**
690     Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
691     to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
692     Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
693     tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
694     equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party
695     to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any
696     statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agree-
697     ment to mediate disputes or claims arising from this Agreement will survive settlement.
698 **28. RELEASE (9-05)**
699     Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFI-
700     CER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through
701     them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the
702     consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-
703     based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system
704     or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the
705     terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pur-
706     sue any remedies that may be available under law or equity. This release will survive settlement.
707 **29. REAL ESTATE RECOVERY FUND (1-18)**
708     A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
709     estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
710     unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
711     3658.

712 Buyer Initials: JSS         ASR Page 12 of 13        Seller Initials: 

713  **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
714  (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
715   and Closing Disclosure(s) upon receipt.
716  (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
717   satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to**
718   **Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
719   directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows
720   communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If
721   there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller,
722   unless otherwise agreed to by the parties.
723  **31. HEADINGS (4-14)**
724  The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
725  sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.
726  **32. SPECIAL CLAUSES (1-10)**
727  (A) The following are attached to and made part of this Agreement if checked:
728    ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
729    ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
730    ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
731    ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
732    ☐ Appraisal Contingency Addendum (PAR Form ACA)
733    ☐ Short Sale Addendum (PAR Form SHS)
734    ☐ _____
735    ☐ _____
736    ☐ _____
737  (B) Additional Terms: _____
738
739
740
741
742
743 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

744 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
745 together shall constitute one and the same Agreement of the Parties.

746 **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised
747 to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

748 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
749 of all parties, constitutes acceptance by the parties.

750  _____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

751  _____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

752  _____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
753   before signing this Agreement.

754  _____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
755   received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

756 BUYER _Joseph Shubetide Sr_____  DATE _10/17/2018_
     401 Center LLC.

757 BUYER _____  DATE _____

758 BUYER _____  DATE _____

759 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
760 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

761 SELLER _Natalie Luta Cardiello_ [dotloop verified 11/03/18 6:16PM EDT A1J9-QAUP-GUUD-GAHE]  DATE _____
       Natalie Cardiello as Trustee

762 SELLER _____  DATE _____

763 SELLER _____  DATE _____

## "AS IS, WHERE IS"
## ADDENDUM TO
## AGREEMENT OF SALE

SELLER: Natalie Lutz Cardiello, Trustee for the Bankruptcy Estate of DONALD J. ROMERO

and

BUYER: __401 Center, LLC (Joseph Shebetich)__

PROPERTY: 7301 BUTLER ST., PITTSBURGH, PA 15206 ("Property")

THIS ADDENDUM is attached to and made a part of the agreement of sale between the above referenced parties dated __October, 24, 2018__ ("Agreement").

Buyer(s) is/are purchasing the Property in "as is, where is," condition, without any warranties of any kind, including warranties of marketability, habitability, merchantability or fitness for a particular use. The Property will be conveyed by "SPECIAL WARRANTY" deed. No evidence of title, title insurance policy or abstract of title will be provided by the Seller.

Buyer(s) will HOLD HARMLESS Seller, the real estate companies and their respective agents as to the condition of the Property and its systems. Buyer(s) acknowledge(s) that he/she/they have thoroughly inspected and examined this Property and are not relying on any statements of the Seller or her representatives as to the condition of the Property including any latent defects. Seller has no obligation to make any repairs or renovations to the Property as a requirement of lender and/or the local building inspector or the failure of any system prior to closing. Buyer(s) is/are responsible for any and all costs associated with a required land and/or building inspection and/or dye test, for turning on and off utilities, and for paying the utility charges if required for any such inspection or dye test.

Buyer shall deposit __Five Thousand Dollars  $5,000.00__ with the Seller as hand money, payable to "Natalie Lutz Cardiello, Trustee" at 107 Huron Drive, Carnegie, PA 15106. Except as set forth below, hand money is non-refundable and will be used by the Seller to pay for advertising and other costs associated with the sale of the Property. Hand money shall be returned to Buyer only in the event that a higher or better offer is made and the Property sold to someone other than Buyer for an amount which is greater than or equal to the purchase price set forth in this Agreement.

Buyer shall have ten (10) days from the date of this Agreement to perform any inspections or to complete any other due diligence he/she/they wish to perform in connection with the purchase of the Property during which period Buyer may request a refund of the hand money. Once the ten (10) day period has elapsed, the hand money is non-refundable, except as otherwise stated herein. It is understood that this entire Agreement is subject to approval by the United States Bankruptcy Court for the Western District of Pennsylvania. Any offer to purchase accepted by the Seller will only commit the Seller to file a motion with the Bankruptcy Court for approval of the sale to the prospective Buyer, at which time of hearing in open court the Bankruptcy Court will solicit high and/or better offers. However, should unforeseen circumstances arise and the Seller determines not to proceed with the sale, the Seller may withdraw such motion and return Buyer's hand money, if appropriate, in accordance with the preceding paragraph.

Closing shall occur on or before ten days from the date the Order of Sale becomes final and nonappealable, or at such other time as may be acceptable to the Seller's counsel, with all such payments to be via certified check, cashier's check, or such other forms of assured and guaranteed payment as may be acceptable to the Seller's counsel.

By signing this Addendum, Buyer certifies that he/she/they have no relationship with the Debtor(s)/current owner(s) of the Property and, if Buyer is corporation, partnership, or other legal entity, that no officer, director, member, shareholder, partner, etc. has a relationship with the Debtor(s)/current owner(s) of the Property.

This Addendum shall be construed under Pennsylvania law. Any disputes arising hereunder shall be settled by the United States Bankruptcy Court for the Western District of Pennsylvania.

The terms of this Addendum shall control and any language in the main body of the Agreement which is inconsistent or conflicts with the language of this Addendum shall be null and void.

_Marianne Barnes_  10/24/18    _Joseph J. Skebetil_  10/24/18
Witness                Date     Buyer                 Date
                                401 Center LLC.

_____  _____  _____  _____
Witness                 Date    Buyer                   Date

                                _Natalie Lutz Cardiello_    dotloop verified
                                                            11/03/18 6:16PM EDT
                                                            QK7U-TV0D-HBEB-0W9S
_____  _____  _____  _____
Witness                 Date    Bankruptcy Trustee, Seller  Date